NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

PEDRO ESPINOZA, *Appellant.*

No. 1 CA-CR 12-0811

FILED 3-18-2014

---

Appeal from the Superior Court in Maricopa County
No.  CR2010-127952-001
The Honorable Roger E. Brodman, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Hopkins Law Office, P.C., Tucson
By Cedric Martin Hopkins
*Counsel for Appellant*

Pedro Espinoza, San Luis
*Appellant*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Donn Kessler joined.

---

**B R O W N**, Judge:

¶1　　　　Pedro Espinoza appeals his convictions and sentences for six counts of kidnapping, one count of armed robbery, one count of aggravated assault, one count of burglary in the first degree, and one count of criminal trespass in the first degree. Counsel for Espinoza filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), advising that after searching the record on appeal, he was unable to find any arguable grounds for reversal. Espinoza was granted the opportunity to file a supplemental brief *in propria persona*, and he has done so.[1]

¶2　　　　Our obligation is to review the entire record for reversible error. *State v. Clark*, 196 Ariz. 530, 537, ¶ 30, 2 P.3d 89, 96 (App. 1999). We view the facts in the light most favorable to sustaining the convictions and resolve all reasonable inferences against Espinoza. *State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989). Finding no reversible error, we affirm.

¶3　　　　The State charged Espinoza with three counts of kidnapping (Counts 1-3:　victims L.B., M.V., and D.G.), class 2 dangerous felonies, in violation of Arizona Revised Statutes ("A.R.S.") section 13-1304; three

---

[1]　　　In addition to his supplemental brief, Espinoza filed a "Motion for Court of Appeals Order to Trial Court and Appellant Counsel to Produce Trial Court Record" and a "Motion to Amend Supplemental Brief within 60 Days After the Whole Trial Court Record is Produced." Because Espinoza is represented by counsel in this appeal, except for his initial supplemental brief, he has no right to submit filings on his own behalf. *See State v. Cook*, 170 Ariz. 40, 48, 821 P.2d 731, 739 (1991) ("Arizona does not recognize a right to hybrid representation."); *State v. Stone*, 122 Ariz. 304, 308, 594 P.2d 558, 562 (App. 1979) ("[T]here is no constitutional right to hybrid representation under either the federal or our state constitution."). Accordingly, it is hereby ordered striking both motions.

counts of kidnapping (Counts 4-6: victims F.R., N.B., and A.B.), class 2 dangerous felonies and dangerous crimes against children, in violation of A.R.S. § 13-1304; one count of armed robbery (Count 7: victim L.B.), a class 2 dangerous felony, in violation of A.R.S. § 13-1904; one count of aggravated assault (Count 8: victim L.B.), a class 3 dangerous felony, in violation of A.R.S. § 13-1204, one count of burglary in the first degree (Count 9: victim L.B.); a class 2 dangerous felony, in violation of A.R.S. § 13-1508; and one count of criminal trespass (Count 11), a class one misdemeanor, in violation of A.R.S. § 13-1504. The following evidence was presented at trial.

¶4        In the early morning hours of May 30, 2010, L.B. was asleep in her home when she was awakened by the sound of breaking glass. She immediately ran to the balcony to look downstairs. She saw someone enter through a window and begin climbing up the stairs. L.B. retreated to her bedroom, grabbed her phone, and dialed 9-1-1. Before she was able to speak with the 9-1-1 operator, the intruder entered her bedroom and took the phone from her. Espinoza, who L.B. later identified in court, then grabbed L.B. by the hair and forced her out of her bedroom.

¶5        Upon leaving her bedroom, L.B. found that others had also entered her home. Espinoza placed a handgun to L.B.'s head and ordered her to give them "whatever valuables [she] had." Shortly thereafter, another intruder permitted L.B. to retrieve her two-year-old daughter and take her to the bedroom where L.B.'s parents were being detained along with L.B.'s two older children, ages six and four. Espinoza then grabbed L.B. by the hair and dragged her from room to room demanding all valuables. Frightened, L.B. gave defendant all the jewelry and money she had. At some point, Espinoza escorted L.B. to the bedroom closet where her parents and children were being held and demanded that L.B.'s parents give him more valuables. L.B.'s father ordered Espinoza not to hurt the children and Espinoza struck him "to shut him up." Espinoza threatened to take L.B.'s daughter and L.B. pled with him not to take her children. At that point, a third person demanded the keys to the truck parked outside, so L.B. retrieved the keys for him. Law enforcement eventually arrived at the scene and the intruders fled from L.B.'s home.

¶6        L.B.'s neighbor, J.R., testified that in the early morning hours of May 30, 2010, his roommate alerted him after she heard the sound of breaking glass at a neighboring home. He went outside to investigate and noticed a car that "didn't belong" parked in front of L.B.'s house and men loading things into the vehicle. He called the police. Shortly after hearing

sirens approaching, J.R. saw Espinoza jump over a fence and enter J.R.'s backyard. J.R. tackled Espinoza and held him until police arrived.

**¶7** Espinoza was taken into custody, read his *Miranda*[2] warning, and escorted to the police station. During questioning, Espinoza admitted he participated in the home invasion and acknowledged having a weapon on his person, but denied removing it from his waistband. Espinoza did not testify at trial.

**¶8** A jury found Espinoza guilty of all charges. Espinoza was sentenced to a cumulative total of fifty-eight and one-half years imprisonment, with 446 days of presentence incarceration credit. Espinoza timely appealed.

## DISCUSSION

**¶9** In his supplemental brief, Espinoza raises four issues for review: (1) his right to counsel on appeal was violated;[3] (2) his right to a fair trial was violated by the admission of certain "prejudicial pictures"; (3) his right to due process was violated when the trial court determined the aggravating factors used to enhance his sentence; and (4) the indictment included multiplicitous and duplicitous charges.

**¶10** Espinoza objected to the admission of the pictures in the trial court, but did not raise any of the other claims below. Therefore, we review his challenge to the evidentiary ruling for harmless error and the remaining claims for fundamental error. *State v. Rutledge*, 205 Ariz. 7, 13, ¶ 30, 66 P.3d 50, 56 (2003) "Harmless error review places the burden on the state to prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence." *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18, 115 P.3d 601, 607 (2005). Under fundamental error review, however, the burden is placed on the defendant to prove both that "fundamental error exists and that the error . . . caused him prejudice." *Id.* at 567, ¶ 20, 115 P.3d at 607. We address each claim in turn.

---

[2]     *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3]     Espinoza claims his constitutional right to counsel has been violated by his attorney's decision to file an *Anders* brief. Espinoza's claim, however, is a challenge to the effectiveness of his appellate counsel, which we will not address on direct appeal. *See State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9, 39 P.3d 525, 527 (2002).

### A.    Admission of Photographs

¶11    Espinoza argues that his right to a fair trial was denied when the court admitted photographs of the child victims in this case, specifically exhibits 24, 25, and 26.

¶12    "The trial court has discretion to decide whether to admit photographs, and we will not disturb its ruling absent a clear abuse of that discretion." *State v. Amaya-Ruiz*, 166 Ariz. 152, 170, 800 P.2d 1260, 1278 (1990).  In determining whether to admit photographic evidence, the court first considers whether it is relevant.  *Id.*; *see also* Ariz. R. Evid. P. 401 (explaining evidence is relevant if "it has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action").  Then, the court must consider "whether the photographs would tend to incite passion or inflame the jury."    "In the event that they are inflammatory, the court balances their probative value against their potential to cause unfair prejudice."  *Id.*; *Amaya-Ruiz*, 166 Ariz. at 170, 800 P.2d at 1278; *see also* Ariz. R. Evid. P. 403 (stating a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice").

¶13    At trial, the State was required to prove that three of the kidnapping counts were dangerous crimes against children.  The photographs were offered into evidence to show the age of the victims.  None of the pictures reflected any trauma or injuries to the victims.  Nonetheless, Espinoza objected to their admission, claiming the photographs were being shown solely to "[e]voke emotion and sympathy from the jurors."  After viewing the photographs, the court overruled Espinoza's objection, finding the photographs "corroborate[d] [L.B.'s] testimony concerning the age of the children" and were not "particularly emotional."  We conclude the court did not abuse its discretion by finding the photographs were relevant and not unduly prejudicial.

### B.    Aggravating Factors

¶14    Espinoza asserts the court violated his right to due process by determining the aggravating factors used to enhance his sentence, arguing that the jury should have made those findings.

¶15    When defense counsel stipulates to a prior conviction, or other aggravating factors, for purposes of sentence enhancement, Arizona Rule of Criminal Procedure 17.6 requires that the court conduct a plea-type colloquy with the defendant before accepting the stipulation.  To ensure such admissions and stipulations are made knowingly and

voluntarily, Rules 17.6 and 17.2 require the court to advise the defendant of his or her right to a hearing and the effects that prior convictions may have on sentencing. *State v. Morales*, 215 Ariz. 59, 61, ¶¶ 6-8, 157 P.3d 479, 481 (2007). The failure to provide this colloquy deprives the defendant of due process and constitutes fundamental error. *Id.* at 61, ¶¶ 8, 10, 157 P.3d at 481.

¶16        Near the end of trial, defense counsel notified the court that Espinoza would stipulate to three aggravating factors: a prior felony conviction, the emotional and financial harm to the victims, and that the offenses were committed for pecuniary gain, avowing as follows:

> I have conferred with my client regarding this issue, and he understands he has an absolute right to put these aggravating factors before a jury. I've explained to him entirely and after explaining everything to him, of course with the assistance of the court interpreter, he's willing to stipulate to those three aggravators, Your Honor.

After conducting a thorough plea-type colloquy with Espinoza, the trial court found that he knowingly, intelligently, and voluntarily entered into the stipulation. Accordingly, we find no error.

### C.        Multiplicitous and Duplicitous Charges

¶17        Espinoza suggests that the indictment was multiplicitous and duplicitous because there were "multiple counts based on the same occasion." An indictment is duplicitous when it charges more than one crime in the same count. *State v. Anderson*, 210 Ariz. 327, 335, ¶ 13, 111 P.3d 369, 377 (2005). An indictment is muliplicitous when it charges a single offense in multiple counts. *State v. Barber*, 133 Ariz. 572, 576, 653 P.2d 29, 33 (App. 1982). "Indictments need not specify the precise act constituting the crime if there is no reasonable basis" for distinguishing multiple acts. *State v. Payne*, 233 Ariz. 484, 508, ¶ 85, 314 P.3d 1239, 1263 (2013) (quoting *State v. Klokic*, 219 Ariz. 241, 246, ¶ 25, 196 P.3d 844, 849 (App. 2008)). "In such a case, 'the defendant is not entitled to a unanimous verdict on the precise manner' in which the act is committed." *Id.* (quoting *State v. Encinas*, 132 Ariz. 493, 496, 647 P.2d 624, 627 (1982)).

¶18        Espinoza has failed to show how any of the counts in the indictment are duplicitous or multiplicitous. Although Espinoza was charged with six counts of kidnapping, each count alleged that the crime was committed against a different victim: L.B., M.V., D.G., F.R., N.B., and A.B. The evidence shows Espinoza physically restrained L.B. while

dragging her from room to room in search of valuables and the other five victims were rounded up and confined to a bedroom closet during the home invasion. *See* A.R.S. § 13-1304 ("A person commits kidnapping by knowingly restraining another person with the intent to . . . aid [] the commission of a felony[.]"). Espinoza was charged with one count of armed robbery against L.B. and the evidence reflects that he held a handgun to her head and demanded that she give him money and other valuables. *See* A.R.S. §§ 13-1902, -1904 (stating a person commits armed robbery by "taking any property of another from his person or immediate presence and against his will" while using a deadly weapon). Espinoza was also charged with one count of aggravated assault against L.B. The evidence reflects that Espinoza repeatedly pointed a handgun at L.B.'s head and threatened to kill her. *See* A.R.S. § 13-1204(A)(2) (stating a person commits aggravated assault by intentionally placing another person in reasonable apprehension of imminent physical injury while using a deadly weapon). The State also charged Espinoza with one count of burglary in the first degree. The record reflects that Espinoza, armed with a handgun, entered L.B.'s residence with the intent to take her property. *See* A.R.S. §§ 13-1507, -1508 (stating a person commits burglary in the first degree by entering a residential structure with the intent to commit a felony therein while knowingly possessing a deadly weapon). Finally, Espinoza was charged with one count of criminal trespass in the first degree. The evidence reflects that Espinoza jumped J.R.'s fence and entered J.R.'s yard, without permission, in an attempt to elude police officers. *See* A.R.S. § 13-1504 (stating a person commits criminal trespass in the first degree by knowingly entering or remaining unlawfully in a fenced residential yard). Thus, we find no error.

**CONCLUSION**

¶19        We have searched the entire record for reversible error and find none. All of the proceedings were conducted in accordance with the Arizona Rules of Criminal Procedure. The record shows Espinoza was

present and represented by counsel at all pertinent stages of the proceedings, was afforded the opportunity to speak before sentencing, and the sentences imposed were within statutory limits. Accordingly, we affirm Espinoza's convictions and sentences.

¶20 Upon the filing of this decision, counsel shall inform Espinoza of the status of the appeal and his options. Defense counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). Espinoza shall have thirty days from the date of this decision to proceed, if he so desires, with a *pro per* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
FILED: mjt