NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DANIEL LOUIS MASON, *Appellant.*

No. 1 CA-CR 20-0464
FILED 12-30-2021

Appeal from the Superior Court in Maricopa County
No.  CR2018-116401-001
The Honorable Laura Johnson Giaquinto, Judge, *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric Knobloch
*Counsel for Appellee*

MayesTelles PLLC, Phoenix
By David V. Telles
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Michael J. Brown joined.

---

**F U R U Y A**, Judge:

¶1        Daniel Louis Mason appeals his convictions and sentences for two counts of aggravated driving while under the influence of intoxicating liquor ("DUI") and resisting arrest. He argues that prosecutorial error[1] deprived him of a fair trial and the superior court's flight instruction was improper. Mason also contends the court erred by denying his post-verdict motion for new trial. Finally, Mason claims the court erred at sentencing when it failed to engage him in a required colloquy before accepting the parties' stipulation that Mason had prior felony convictions. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        On April 1, 2018, Trooper Patrick Stoner responded to emergency calls describing a pickup truck "swerving all over the road and almost hitting vehicles" on a freeway in Phoenix. As Stoner drove behind the truck, he observed its driver change lanes without signaling and nearly collide with another vehicle. Stoner then activated his vehicle lights and siren to initiate a traffic stop, but the truck did not immediately pull over.

---

[1]       In his briefing, Mason characterizes the matter at issue in this case as "prosecutorial misconduct." But our supreme court has recently instructed that "[w]hen reviewing the conduct of prosecutors in the context of 'prosecutorial misconduct' claims, courts should differentiate between 'error,' which may not necessarily imply a concurrent ethical rules violation, and 'misconduct,' which may suggest an ethical violation." *Matter of Martinez*, 248 Ariz. 458, 470, ¶ 47 (2020). Having reviewed the briefing and the record herein—and in view of our decision below—we find that the prosecutor's statements, as challenged here, are better understood as arguments pertaining to "error" rather than "misconduct." There is nothing in this record to establish that the prosecutor's actions were designed to infringe on Mason's rights or otherwise commit any other form of intentional professional misconduct.

¶3        Mason, the driver of the truck, eventually stopped on the shoulder next to a gravel embankment. During the ensuing investigation, Stoner learned that Mason's driver's license was suspended, and he noticed Mason was exhibiting physical signs of alcohol impairment. With Mason's consent, Stoner performed a horizontal gaze nystagmus test, which revealed six of six cues indicating impairment. As Stoner administered the test, another trooper arrived to assist.

¶4        Mason then refused Stoner's request to participate in additional field sobriety tests. As Stoner told Mason he was under arrest for DUI and attempted to handcuff him, Mason replied, "[N]o, I'm not," and ran down the embankment, dragging the troopers with him. Mason then tumbled to the ground, and a struggle ensued before Stoner restrained Mason.

¶5        Mason sustained minor injuries and was transported to a hospital where his blood was drawn pursuant to a search warrant. Subsequent testing and retrograde analysis revealed Mason's blood had an alcohol concentration between .190 and .203 within two hours of driving.

¶6        The State charged Mason with two counts of aggravated DUI and one count of resisting arrest. Mason was released from pretrial custody, and after a five-day trial the jury found him guilty as charged. Mason, however, failed to appear for return of the verdicts. The court therefore issued a warrant for his arrest and Mason was apprehended on the warrant three weeks later. Meanwhile, defense counsel filed a motion for new trial, which the court did not consider because it was untimely.

¶7        Based on the parties' stipulation that Mason had two prior historical felony convictions, the court imposed concurrent presumptive terms of 10 years for the aggravated DUI convictions.[2] Mason timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I.    Prosecutorial Error

¶8        Mason argues prosecutorial error occurred four times during closing arguments. For prosecutorial error to warrant reversal where a timely objection was entered of record, a defendant must demonstrate (1)

---

[2]      The court sentenced Mason to time served for the misdemeanor resisting-arrest conviction.

"error indeed occurred," and (2) "there is a 'reasonable likelihood that the error could have affected the jury's verdict, thereby denying defendant a fair trial.'" *State v. Vargas*, 251 Ariz. 157, 163, ¶ 9 (App. 2021) (quoting *Martinez*, 248 Ariz. at 469, ¶ 43). But where a defendant fails to object—or properly object—to alleged instances of prosecutorial error, we review such claims solely for fundamental error. *See id.* at 163, ¶ 10 (citing *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018)); *see also State v. Morris*, 215 Ariz. 324, 335, ¶ 47 (2007). Under fundamental error review, the defendant must first show trial error exists. *Vargas*, 251 Ariz. at 163–64, ¶ 10 (citing *Escalante*, 245 Ariz. at 142, ¶ 21). If error exists, a defendant must then show such error went to the foundation of the case, took from him a right essential to his defense, or was so egregious that he could not possibly have received a fair trial. *Id.* at 164, ¶ 10. Under the first two aforementioned instances, the defendant "must also separately show prejudice resulted from the error." *Id.* But if a defendant shows the error was so egregious that he could not have received a fair trial, he has necessarily shown prejudice and must receive a new trial. *Id.*

**¶9**        The first instance of alleged error, as objected to at trial, pertained to an essential element of the aggravated DUI offenses: Mason's knowledge at the time of the offenses that his driver's license was suspended. *See* A.R.S. § 28-1383(A)(1) (committing DUI while driver license is suspended constitutes aggravated DUI); *State v. Cifelli*, 214 Ariz. 524, 527, ¶ 12 (App. 2007). The prosecutor argued to the jury that Mason must have known about the suspension because he challenged it at an administrative hearing in late 2017. According to Mason, the evidence showed that at the administrative hearing, the hearing officer indicated that Mason's license would not be suspended; therefore, Mason contends he did not know of the suspension.[3]

**¶10**        Whatever error can be attributed to the prosecutor's argument, it does not require reversal because the purported error was not such that there was a reasonable likelihood it could have affected the jury's verdict. Other evidence established Mason's knowledge of his license suspension at the time he committed the offenses, albeit for a different matter than the one considered at the administrative hearing. For example, Exhibit 6 contains a letter from the Arizona Department of Transportation dated February 27, 2018, informing Mason that his driver license was

---

[3]        Although the hearing officer stated at the administrative hearing that he would "void the suspension," he thereafter changed his mind and issued an order finding the suspension was "appropriate" and delayed the suspension's start date to February 21, 2018.

suspended for 90 days commencing March 19, 2018. As the jurors were instructed, they could, therefore, presume Mason knew, or reasonably should have known, of his license suspension when the April 1, 2018 DUI incident occurred. *See Cifelli,* 214 Ariz. at 527, ¶¶ 12–13 (discussing the presumption of notice that arises when ADOT shows that it mailed notice of suspension to licensee).

¶11        Mason also contends the prosecutor improperly argued his driver's license was suspended twice. The evidence, however, indicates Mason's license was indeed suspended twice. Once for 90 days beginning on February 21, 2018, and separately for 90 days beginning on March 19, 2018, pursuant to the hearing officer's order. Given the prosecutor's statement to the jury, the fact that the two suspensions derive from the same circumstance is irrelevant. Thus, Mason demonstrates no error in that regard.

¶12        A third instance of error purportedly occurred when the prosecutor stated Mason had "multiple interactions" with the Motor Vehicle Division (MVD). Again, no error occurred because the evidence established Mason had obtained an identity card and multiple licenses of different classes from the MVD, updated his address with the MVD numerous times, and requested (and attended) an administrative hearing to challenge one of his suspensions.

¶13        Mason assigns a fourth error, as objected to at trial, when the prosecutor stated Mason drove by several exits before pulling over on the freeway. According to trial transcripts, Stoner testified Mason passed one exit and one "huge dirt spot" that was a location "pretty nice to stop at" before eventually pulling over. During his closing argument, however, the prosecutor stated, "You heard that [Mason] passed several exits along the way and eventually comes to a stop after the exit on Avondale Boulevard here on the shoulder." Thus, the prosecutor technically erred by referring to "several exits." But the error does not warrant reversal because it was not "so pronounced and persistent that it permeate[d] the entire atmosphere of trial." *Morris*, 215 Ariz. at 335, ¶ 46 (citing *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998)). Nor was the error of a kind that could have had any reasonable likelihood of affecting the verdicts, such that it denied Mason a fair trial. The evidence showed Mason had opportunity to pull over before he actually did so, which was the factual predicate the prosecutor conveyed to support an inference of Mason's guilty conscience.

¶14        Additionally, Mason's argument that the court abused its discretion when, in response to his contemporaneous objections to two of

the purported instances of error, it "refused to correct the record" is likewise unavailing. The court reminded the jurors that lawyers' arguments are not evidence and instructed them to rely on their own recollection of the evidence. This action was sufficient to address Mason's concerns under the circumstances pertinent to this case. *See State v. Herrera,* 174 Ariz. 387, 395 (1993) (explaining jurors are presumed to follow instructions); *State v. Koch*, 138 Ariz. 99, 101 (1983) ("The trial judge is able to sense the atmosphere of the trial, the manner in which the objectionable statement was made, and the possible effect it had on the jury and the trial.").

## II.     Flight Instruction

¶15       Mason further argues the court erred by giving a flight instruction to the jury. According to Mason, the evidence merely suggested he and Stoner "f[ell] down the steep embankment during Mr. Mason's arrest" and, therefore, did not support the flight instruction. We review the court's decision to give a flight instruction for an abuse of discretion. *State v. Ewer*, 250 Ariz. 561, 569, ¶ 26 (App. 2021).

¶16       "Instructing on flight is proper when the defendant's conduct manifests a consciousness of guilt." *State v. Cutright*, 196 Ariz. 567, 570, ¶ 12 (App. 1999), *overruled on other grounds by State v. Miranda*, 200 Ariz. 67, 68–69, ¶¶ 4–5 (2001). Whether the court should give a flight instruction is determined by the facts of the particular case. *Id.* "What the court must determine is whether there is evidence from which it can be reasonably inferred that the defendant engaged in some eluding conduct that . . . was an attempt to prevent apprehension . . . ." *Id.* (internal quotation marks omitted). Stated differently, a flight instruction is appropriate if the court is "able to reasonably infer from the evidence that the defendant left the scene in a manner which obviously invites suspicion or announces guilt." *State v. Speers*, 209 Ariz. 125, 132, ¶ 28 (App. 2004) (citation omitted).

¶17       Here, Stoner testified that when he informed Mason he was under arrest, Mason exclaimed, "[N]o, I'm not." According to Stoner's testimony, Mason then "started to tense up . . . and . . . pull away from [Stoner]" before running from the roadway and down the embankment. Given Stoner's testimony, there was evidence leading to the reasonable inference that Mason fled to avoid arrest. Thus, the court did not abuse its discretion by giving the flight instruction.

## III.    Motion for New Trial

¶18       Mason additionally argues the court erred by effectively dismissing his motion for new trial without considering its merits. "A party

must file a motion for a new trial no later than 10 days after return of the verdict being challenged. This deadline is jurisdictional and the court may not extend it." Ariz. R. Crim. P. ("Rule") 24.1(b). Here, the verdicts were returned on March 6, 2020, and Mason filed his motion for new trial on March 21, 2020.[4] Mason's motion, therefore, was five days late and the court did not have jurisdiction to address its merits. *See id.* Accordingly, the court properly dismissed Mason's motion for new trial.

**¶19**         Nonetheless, Mason argues the court should have extended the 10-day deadline by five days pursuant to Rule 1.3(a)(5). That rule generally provides, "If a party may or must act within a specified time after service and service is made by [mail], 5 calendar days are added after the specified time period would otherwise expire . . . ." Ariz. R. Crim. P. 1.3(a)(5). By its terms, the five-day extension in Rule 1.3(a)(5) applies to time limits imposed after a party is *served*. The extension expressly does not apply to "the clerk's distribution of notices, minute entries, or other court-generated documents." *Id.* Here, the minute entry setting forth the verdicts was not "served" on Mason; it was electronically filed into the record by the court clerk. Thus, the five-day extension did not apply. Mason cites no applicable authority that would require a different result.

**¶20**         Mason further argues his trial counsel provided constitutionally deficient representation by failing to timely file his motion for new trial. That issue is not properly before us and we need not, and do not, address it. *See State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002) ("[I]neffective assistance of counsel claims are to be brought in Rule 32 proceedings. Any such claims improvidently raised in a direct appeal, henceforth, will not be addressed by appellate courts regardless of merit.").

## IV.    Admission to Prior Convictions

**¶21**         Mason argues the court fundamentally erred when it accepted the parties' stipulation at sentencing that Mason had two prior felony convictions. Before the court did so, Mason contends it was required to conduct a colloquy under Rule 17.6. We agree that the court's failure to engage in the colloquy constituted fundamental error. *See State v. Morales*, 215 Ariz. 59, 61, ¶ 10 (2007). But to justify a remand for resentencing, Mason must further establish prejudice. *Id.* at 62, ¶ 11. Typically, a defendant does

---

[4]      The parties assert that the motion was filed on March 20, 2020. The clerk's stamp, however, shows that the motion was electronically filed on March 21, 2020, at 1:48:09 AM. The difference in dates is not material for purposes of this decision.

so by showing that he "would not have admitted the fact of the prior conviction[s] had the colloquy been given." *Id.* (citation omitted). But here, copies of Mason's prior convictions were admitted as exhibits at sentencing and the court expressly referred to them in finding that Mason was a category three repetitive offender. *See* A.R.S. § 13-703(C), (J). Thus, Mason fails to establish prejudice resulting from the omitted colloquy. *See Morales*, 215 Ariz. at 62, ¶ 13.

## CONCLUSION

**¶22** For the foregoing reasons, Mason's convictions and sentences are affirmed.

